# EXHIBIT 14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Civil Action No. 23-10612-MJJ |
| v. | ) ) | |
| OTIS WORLDWIDE CORPORATION and OTIS ELEVATOR COMPANY, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFF'S MOTION TO COMPEL
[Docket No. 37]

May 1, 2024

Boal, M.J.

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), has moved to compel defendant Otis Worldwide Corporation ("Otis") to produce (1) a withheld email attachment over which Otis has made a claim of work product privilege and (2) documents responsive to Request for Production ("RFP") No. 39 seeking financial documents since 2021. Docket No. 37.[1]  This Court heard oral argument on April 30, 2024.  For the following reasons, this Court grants the motion.

---

[1] On March 29, 2024, Judge Joun referred the motion to the undersigned.  Docket No. 41.

I.      RELEVANT BACKGROUND

In this action, the EEOC alleges that defendants[2] discriminated against charging party Cameron Bateman when they refused to provide a reasonable accommodation for his disabilities and retaliated against him for making an accommodation request.  On or about February 8, 2021, Bateman was hired as an Assistant Mechanic in the Construction Department.  Amended Complaint ("AC") at ¶ 13(g).  The EEOC alleges that, on or about March 30, 2021, Bateman made a formal request for accommodation of his disabilities, autism and ADHD.  Id. at ¶ 13(k). Between April and November 2021, Bateman made repeated efforts to confer with Otis's Human Resources Department and his supervisors to find an assignment that would accommodate his disabilities.  Id. at ¶ 13(m).

On or about May 9, 2021, Bateman reported a foot injury that occurred while he was on the job.  Id. at ¶ 13(u).  Otis placed him on light duty and then on unpaid leave on or about May 21, 2021.  Id. at ¶¶ 13(w)-(x).  The EEOC alleges that, throughout October 2021, Otis continued to refuse to allow Bateman to return to work despite being medically cleared to do so or to provide him with a reasonable accommodation.  See generally id. at ¶¶ 13(u)-(qq).

Bateman's request for an accommodation was escalated to Jeanie Demshar, Associate Director of Otis's Labor and Employment Relations Department.  See id. at ¶ 13(q).  Demshar is an attorney.  Declaration of Jeanie Demshar (Docket No. 40-1) ("Demshar Decl.") at ¶ 2.  Since the beginning of 2021, she has been responsible for providing labor and employment law guidance and direction to management for matters affecting Otis's Eastern Operating Unit.  Id. at

---

[2] The complaint names Otis Worldwide Corporation and Otis Elevator Company.  Amended Complaint ("AC") at ¶ 4.  The EEOC alleges that, at all relevant times, the defendants have operated as a single employer and/or integrated enterprise.  Id. at ¶ 7.  The instant motion is brought against Otis Worldwide Corporation only.  Unless otherwise stated, references to Otis are to Otis Worldwide Corporation.

¶ 6.  Among other responsibilities, she investigates labor grievances and unfair labor practice charges, and she is responsible for grievances from initial filings through arbitration for the Eastern Operating Unit.  Id.  She also provides guidance on employee accommodation requests for unionized employees in the Eastern Operating Unit, and in that role, she performs both legal and employee relations functions.  Id. at ¶ 7.  In her legal role, she identifies, investigates, and mitigates potential risks to the organization and provides legal advice to management related to unionized employee accommodation requests.  Id.

On September 1, 2021, Bateman sent an email to Demshar asking whom he should contact in order to initiate "the oral step of the grievance process."  Docket No. 40-2 at 2.  On September 21, 2021, Bateman informed Demshar that he had scheduled an intake appointment with the Massachusetts Commission Against Discrimination ("MCAD").  See Docket No. 40-3 at 2.  On September 29, 2021, Bateman texted Demshar stating, in part, "FYI, I think the 10-day timeline for the step one is up next Thursday, so if you're able to find some time before your schedule gets loaded up, can you send a few possibilities of availability so I can make sure [the union representative] can make it?"  Docket No. 40-4 at 2.  In the same text, Bateman requested information from Demshar "so [they] [could] be ready to hopefully resolve the grievance one way or the other," and informed Demshar that his intake meeting had been rescheduled for that Friday.  Id. at 3-4.

On October 5, 2021, Demshar and Bateman spoke on the phone.  Docket No. 40 at 4.  Demshar took detailed notes of this call.  Id.  On October 11, 2021, Demshar attached the notes to an email to Dr. John Longphre, Otis's consultant physician.[3]  See Docket No. 37-7 at 2.

---

[3] Demshar titled the attachment "FW_NOTES – Cameron Bateman's ADA request – 10_5_21 Interactive Discussion w_Cameron.msg."  See Docket No. 37-7 at 2.

Demshar stated, in relevant part, that:

> Hi Dr. Longphre. Attached is the summary of my conversation with Cameron on 10/5/21 re: his ADA request. You will see that I outlined what I wanted to discuss with him prior to calling him. I cut and pasted the ADA request into the email. My questions are in red and black font. His answers are in blue. You will see that we jumped around and I still don't believe I got the answers I needed or the direction I was looking for from him. I still do not know exactly what works and does not work from him while working in the trade. Please review. Hopefully you can get more clarification from Dr. Craig when you speak with her. Feel free to ask her the same questions I ask in the attached, but please do not share the attached with her.

Id. By this motion, the EEOC seeks an order compelling Otis to produce a copy of the attachment to Demshar's email to Dr. Longphre. Docket No. 38 at 8-20.

The EEOC also seeks documents responsive to RFP 39, which seeks:

> Documents sufficient to show Defendant's financial condition including 2021 to the present including, but not limited to, federal and state income tax returns; financial statements; balance sheets reflecting assets, liabilities, and net worth; income and expense statements; and/or appraisals of the net worth, market value, or other value of Defendant's assets.

Docket No. 37-11 at 26. Otis objected to this request as follows:

> Otis objects to this Request to the extent that it calls for materials subject to the attorney-client privilege and work product doctrine. Otis further objects to this Request as vague and ambiguous in its use of the phrase "Defendant's financial condition." Otis further objects to this Request because it seeks highly sensitive, confidential information about Otis's business that has nothing to do with the claims or defenses at issue in this litigation.

Id. Both Demshear and Longphre were identified as individuals with discoverable information by Otis in its initial disclosures. Docket No. 37-9 at 3-4.

II.  STANDARD OF REVIEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case depends on, among other things, "the

4

importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the expense of the proposed discovery outweighs its likely benefit."  Id.

If a party fails to respond to requests for production of documents or interrogatories, the party seeking discovery may move to compel production of the requested information.  See Fed. R. Civ. P. 37(a)(3).  "[T]he party seeking an order compelling discovery responses over the opponent's objection bears the initial burden of showing that the discovery requested is relevant."  Torres v. Johnson & Johnson, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citation omitted).  "Once a showing of relevance has been made, the objecting party bears the burden of showing that a discovery request is improper."  Id. (citation omitted).

One claiming privilege, "bears the burden of establishing that . . . [the privilege] applies . . . and that it has not been waived."  In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); see also Amgen, Inc. v. Hoecsht Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000) ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived.").  Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege.  Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012).

III.    ANALYSIS

   A.    Demshar's Notes Of Her October 5, 2021, Conversation
         With Bateman Are Not Protected By The Work Product Doctrine

Otis has withheld Demshar's notes of her October 5, 2021, conversation with Bateman on

5

the grounds that they are protected by the work product doctrine.  For the following reasons, I find that Otis has not met its burden to show that the work product doctrine applies to the notes.

        1.        <u>The Elements Of Work Product</u>

The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative.[4]  Fed. R. Civ. P. 26(b)(3); <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947).  "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation." <u>Amgen Inc.</u>, 190 F.R.D. at 290.  There are two categories of work product: opinion work product, which encompasses "mental impressions, conclusions, opinions or legal theories of an attorney," and fact or ordinary work product, which "embrac[es] the residue." <u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007, 1014 (1st Cir. 1988).

A document is entitled to protection if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation." <u>State of Maine v. U.S. Dep't of Interior</u>, 298 F.3d 60, 68 (1st Cir. 2002) (emphasis in original) (quoting <u>United States v. Adlman</u>, 134 F.3d 1194, 1202 (2d Cir. 1998)).  The "because of" standard is intended to sweep in a broader universe of documents than simply those "prepared primarily or exclusively to assist in litigation." <u>In re Grand Jury Subpoena</u>, 220 F.R.D. 130, 146 (D. Mass. 2004) (internal citation and quotation omitted).  However, the standard does not protect "documents that are prepared in

---

[4] Federal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question. <u>Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.</u>, 173 F.R.D. 7, 11 (D. Mass. 1997).

the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Maine, 298 F.3d at 70.

Work product protection is not waived simply by disclosure to a third person. Bryan v. ChemWerth, Inc., 296 F.R.D. 31, 40 (D. Mass 2013). Rather, it is waived "when the documents are used in a manner contrary to the doctrine's purpose," such as where disclosure is made to an adversary or potential adversary. Id.

2.      Production Of Work Product

Work product is generally discoverable if a party demonstrates that it has substantial need for the materials and cannot obtain, without undue hardship, their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).

The meaning of "substantial need" is not well-developed. See F.T.C. v. Boehringer Ingelheim Pharm., Inc., 778 F.3d 142, 154 (D.C. Cir. 2015) (collecting cases). At minimum, the term implies a standard elevated from that of mere discoverability: some "special showing" of a unique quality must be present. Fed. R. Civ. P. 26(b)(3) advisory committee notes; see Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., No. CV 07-10930-NMG, 2009 WL 10692782 at *3 (D. Mass. July 1, 2009) ("The marginal relevance of the material . . . belies the presence of substantial need relative to the work product doctrine."); Ferrara, 173 F.R.D. at 16 (Where documents are unique and constitute the only evidence to support plaintiff's allegations, plaintiff may have substantial need for them).

"[A] moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and special circumstances excuse the movant's failure to obtain the requested materials itself." Boehringer Ingelheim, 778 F.3d at 155 (citation omitted). "The substantial

7

need inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery." Id. at 156 (citation omitted). "[N]o heightened showing of relevance is required." Id.

The exception also requires the invoking party to demonstrate that it "cannot, without undue hardship, obtain [the materials'] substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "[N]either inconvenience nor expense constitute sufficient cause to find undue hardship." Colonial Gas Co. v. Aetna Cas. & Sur. Co., 139 F.R.D. 269, 275 (D. Mass. 1991). However, the unavailability of material from another source constitutes undue hardship. Connelly v. Dun & Bradstreet, Inc., 96 F.R.D. 339, 343 (D. Mass. 1982).

Discovery of opinion work product is subject to a higher standard than that of fact work product. In re Grand Jury Subpoena, 220 F.R.D. at 145; In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d at 1015. To determine whether such a heightened demonstration has been made, judges of this District have used a test originally announced by the United States Court of Appeals for the Ninth Circuit in Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573 (9th Cir. 1992). See Ferrara, 173 F.R.D. at 17; Calandro v. Sedgwick Claims Mgmt. Servs., Inc., No. CV 15-10533-PBS, 2015 WL 8082419 at *2 (D. Mass. Dec. 7, 2015). The Holmgren test provides that opinion work product is discoverable when two conditions are met: first, that the mental impressions underlying the opinion work product must be at issue in the case, and second, that the need for the material is compelling. Holmgren, 976 F.2d at 577.

3.  Otis Has Not Shown That The Notes Are
    Protected By The Work Product Doctrine

As discussed above, a document is created in anticipation of litigation if it was created because of litigation. Maine, 298 F.3d at 68. While it can reasonably be found that Otis may have anticipated litigation at the time the notes were drafted by Demshar, there is nothing in the

email, the notes, or Demshar's affidavit to show that the notes were prepared because of any anticipated litigation.  Rather, the context of the notes show that they were prepared because Bateman requested an accommodation and Otis was required to respond to his request.  Having reviewed the notes in camera, this Court finds that they were taken as part of the employer-employee interactive process contemplated by the ADA and would have been prepared regardless of the prospect of litigation.  See, e.g., United States v. 111 East 88th Partners, No. 16-cv-9446, 2018 WL 4519203, at *3 (S.D.N.Y. Sept. 20, 2018) (finding that work product doctrine did not protect from disclosure defendant's reasons for requesting certain information "because Defendant had to respond to Mr. Reich's requests for reasonable accommodation regardless of any litigation").

Even assuming that Bateman's expressed intent to file a union grievance might have been a catalyst for Otis to respond to his request for an accommodation, and that Demshar responded with the possibility of litigation in mind, such facts do not convert the notes into work product absent some evidence they were created because of the prospect of litigation.  See Koumoulis v. Independent Fin. Mktg. Group, Inc., 29 F.Supp.3d 142, 150 (E.D.N.Y. 2014) (finding that awareness of potential litigation does not convert advice on dealing with internal human resources issues into advice given in anticipation of litigation).  Otis has provided no such evidence here and the notes themselves do not provide any.  Accordingly, I find that Otis has not met its burden to show that the notes are protected by the work product doctrine.

B.      Documents Regarding Otis's Financial Condition

The EEOC seeks an order compelling Otis to produce documents responsive to RFP No. 39, which seeks documents regarding Otis's financial condition since 2021.  Docket No. 38 at 20-22.  "Generally, district courts do not allow prejudgment discovery regarding a defendant's

ability to satisfy a judgment, aside from the initial disclosures required by Rule 26(a)(1)(A)(iv)." Katz v. Liberty Power Corp., LLC, No. 18-cv-10506-ADB, 2020 WL 3492469, at *5 (D. Mass. June 26, 2020) (citation omitted). However, when, as here, plaintiffs seek punitive damages, "a majority of federal courts permit pretrial discovery of financial information about the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages." Id. (citations omitted).

Otis does not dispute the discoverability of its financial information given the EEOC's claim for punitive damages. See Docket No. 40 at 15-16. Rather, Otis argues that the Court should deny the request at this time and revisit the issue later should the case survive summary judgment. See id. It maintains that "[i]t makes good sense to wait until after summary judgment to force any party to produce highly sensitive, confidential financial information for punitive damages purposes." Id. at 15. Any confidentiality concerns,[5] however, are addressed by the Stipulation and Order of Confidentiality entered in this case. See Docket No. 34. It would be more efficient to finish all discovery pursuant to the schedule issued by Judge Joun. See Docket No. 32. Accordingly, Otis shall produce documents responsive to RFP No. 39 within 30 days.

IV.     ORDER

For the foregoing reasons, this Court grants the EEOC's motion to compel. This Court denies Otis's request for the attorney's fees incurred in opposing this motion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[5] Otis also argues that the information is publicly available which undercuts its confidentiality concerns.

10