UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) ) ) | Civil Action No. 24-CV-10370-AK |
| v. | ) ) | |
| ATLANTIC PROPERTY MANAGEMENT CORPORATION, and DIVERSIFIED FUNDING, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**ANGEL KELLEY, D.J.**

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") brings this action against Defendants Atlantic Properties Management Corporation ("Atlantic Properties") and Diversified Funding, Inc. ("Diversified Funding"), alleging they unlawfully terminated and failed to provide reasonable accommodations to Tiffany Gunther in violation of the Americans with Disabilities Act ("ADA"). [Dkt. 1].  Before the Court is Defendants' Motion for Summary Judgment [Dkt. 57] and the EEOC's Motion for Partial Summary Judgment [Dkt. 68].  For the reasons below, Defendant's Motion for Summary Judgment is **DENIED**, and the EEOC's Motion for Partial Summary Judgment is **GRANTED**.

I.      BACKGROUND

The facts of the case are summarized in accordance with Local Rule 56, which governs the presentation of proof at summary judgment. L.R., D. Mass. 56.1.  In short, in evaluating the Motions, the Court relies upon the Parties' Consolidated Statement of Material Facts and

1

responses thereto. [Dkt. 75].  Facts admitted by each Party are presumed true, while facts denied

by each Party or raised only in rebuttal are considered disputed.  For disputed facts, the Court

adopts the version of the evidence in the light most favorable to the non-moving party.

Diversified Funding is a New England-based real estate, property management, and

investment company. [Dkt. 75 ¶ 1].  Atlantic Properties employs the leasing, reception, and

maintenance personnel who work at properties managed by Diversified Funding and thus

operates as a joint employer for purposes of this case. [Id. ¶ 3].  The companies maintain a

central office in Boston, where their senior executives are based. [See id. ¶¶ 4-5].  They employ

approximately one hundred individuals. [Id. ¶ 6].

In or around August 2021, Tiffany Gunther interviewed with Defendants for the position

of Executive Administrative Assistant ("EAA"). [Id. ¶ 7].  As described in the job posting, the

EAA role included responsibilities related to marketing and advertising, human resources

support, coordination of travel and events, as well as general administrative tasks such as running

errands for senior executives, making bank deposits, typing emails, making filings, placing

phone calls, and preparing Massachusetts eviction paperwork. [Id. ¶¶ 28-29].  During the

interview process and prior to receiving an offer, Gunther disclosed to Roberta Russo,

Defendants' Regional Leasing Manager with whom she first interviewed, that she was

experiencing medical issues and seeing a doctor. [Id. ¶ 13].  At or around the same time, Gunther

began part-time employment as an executive assistant with another employer. [Id. ¶ 130].

The next month, Gunther found a lump in her breast, and, on September 13, 2021,

underwent a mammogram, followed by a biopsy three days later. [Id. ¶¶ 19, 135-136].  On

September 22, 2021, Defendants extended a written offer of employment to Gunther for the EAA

position, including a job description; she accepted the offer approximately one hour later. [Id.

¶¶ 17, 20, 161].  The offer provided for five days of paid sick leave and five days of paid vacation annually, with a start date "as soon as practical." [Id. ¶¶ 158-159, 162].  The next day, Gunther received the results of her biopsy and learned for the first time that she had been diagnosed with Stage 3 breast cancer. [Id. ¶¶ 142, 148].  Her medical providers advised that her anticipated course of treatment would last approximately one year. [Id. ¶ 144].

Shortly thereafter, Russo contacted Gunther to inquire if she could begin work on October 4, 2021. [Id. ¶ 163].  Gunther confirmed her availability for that date and, during the same communication, disclosed her cancer diagnosis. [Id. ¶¶ 164-165].  Soon thereafter, Defendants advised Gunther that her start date would be delayed by approximately one week. [Id. ¶ 167].

On September 30, 2021, Defendants requested that Gunther provide the EAA job description to her medical provider and supply information regarding "whether they [sic] are any limitations on [Gunther's] ability to perform the essential functions [of the EAA position] due to [Gunther's] medical condition or treatment, and if so whether any reasonable accommodations are requested." [Dkt. 72 ¶ 25].  On October 5, 2021, Gunther responded with a physician's note stating she "is able to work during her treatment and perform duties as an Administrative Assistant" but "will need time off for treatment and intermittently for recovery as needed." [Id. ¶ 42].  That same week, Gunther began cancer treatment, consisting of weekly chemotherapy sessions held on Fridays, each lasting approximately 3.5 to 5 hours, followed by several days of fatigue. [Id. ¶¶ 64-65].  Her physicians advised that surgery would likely be required following the completion of chemotherapy. [Id. ¶ 66].

On October 13, 2021, Defendants followed up with Gunther, requesting more detailed information regarding her anticipated treatment. [Dkt. 72 ¶ 44].  Specifically, they requested that

Gunther's medical provider "provide as much as detail as possible about how frequently [Gunther] will need time off for treatment, the length of any appointment for treatment, and the length of any periods of recovery." [Id.].  In the interim, between October 7 and 28, 2021, Defendants contacted at least seven additional candidates regarding the EAA position. [Id. ¶¶ 175-176].

On October 26, 2021, Gunther submitted a second physician's note, dated October 19, 2021, stating:

> [Gunther] is able to work during her treatments and perform her job duties as an Administrative Assistant.
>
> She will need time off for treatments, given weekly, approximately 4-5 hours for visit/treatment.  This will be followed by surgery and recovery (length TBD), and followed by visit/treatments, also approx. 4-5 hr visits, every 3 weeks for a year. She may require 1-3 unplanned days off for symptoms related to treatment intermittently, once a month.

[Dkts. 72 ¶ 45; 58-17].  Two days later, on October 28, 2021, Defendants rescinded Gunther's offer of employment by email, citing her anticipated absences for treatment. [Dkt. 72 ¶¶ 47-48].

On June 30, 2022, Gunther filed a charge of discrimination with the EEOC. [Id. ¶ 73]. On November 1, 2023, the EEOC issued a Letter of Determination finding reasonable cause that Defendants had violated the statute and invited the Parties to engage in conciliation. [See id. ¶ 74].  After conciliation efforts proved unsuccessful, the EEOC issued a Notice of Failure of Conciliation on November 20, 2023, and on February 15, 2024, filed the instant action. [Dkt. 1]. The EEOC seeks injunctive relief, back pay, reinstatement or front pay, compensatory and punitive damages, and costs. [Id.].  Defendants moved for summary judgment on September 12, 2025, and the EEOC filed a Motion for Partial Summary Judgment on December 22, 2025.  The Court heard oral argument by the parties on the Cross Motions for Summary Judgment on July 31, 2026.

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment may be granted when the record, viewed in the light most favorable to the non-moving party, presents no "genuine issue of material fact," and the moving party is entitled to judgment as a matter of law. Paul v. Murphy, 948 F.3d 42, 49 (1st Cir. 2020) (citation omitted).  The court must consider (1) whether a factual dispute exists; (2) whether the factual dispute is "genuine," such that a "reasonable fact-finder could return a verdict for the nonmoving party on the basis of the evidence"; and (3) whether a fact genuinely in dispute is material, such that it "might affect the outcome of the suit under the applicable substantive law." Scott v. Sulzer Carbomedics, Inc., 141 F. Supp. 2d 154, 170 (D. Mass. 2001); see also Napier v. F/V DEESIE, Inc., 454 F.3d 61, 66 (1st Cir. 2006).  The court must evaluate "the record and [draw] all reasonable inferences therefrom in the light most favorable to the non-moving parties." Est. of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010) (citing Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 183-84 (1st Cir. 1999)).  A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Paul, 948 F.3d at 49 (citation omitted).

A dispute is "genuine" when the evidence is such that a reasonable factfinder could resolve the issue in favor of the non-moving party, and a fact is "material" where it might affect the outcome of the suit under the applicable law. See Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994); Patco Constr. Co., Inc. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012).  On issues where the non-moving party bears the ultimate burden of proof, the

5

non-moving party "must present definite, competent evidence to rebut the motion." Mesnick, 950 F.2d at 822.  Finally, where a court rules simultaneously on cross-motions for summary judgment, "it must view each motion, separately, through this prism," and "may enter summary judgment only if the record, read in this manner, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Hevia, 602 F.3d at 40 (internal citations omitted).

## III.    EEOC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

A necessary element of each of the EEOC's claims is that Gunther had a "disability" within the meaning of the ADA at the time of the challenged employment action.  The EEOC moves for partial summary judgment on this issue, asserting that Plaintiff's breast cancer diagnosis qualifies as a disability under the statute.  Defendants do not oppose the Motion, and the Court finds that the Motion should be granted.

The ADA defines a "disability," in relevant part, as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).  "Major life activities" expressly include, among other things, "normal cell growth." Id. § 12102(2)(B).  The regulations implementing the ADA further provide that "it should easily be concluded that . . . cancer substantially limits normal cell growth." 29 C.F.R. § 1630.2(j)(3)(iii).  On the undisputed record, Gunther had Stage 3 breast cancer at the time Defendants rescinded her offer of employment, and such cancer would require chemotherapy. [Dkt. 72 ¶¶ 145-153].  Consistent with the statutory and regulatory framework, such a diagnosis constitutes an impairment that substantially limits the major life activity of normal cell growth. See Alston v. Park Pleasant, Inc., 679 Fed. App'x 169, 172 (3d Cir. 2017) (noting that "cancer can—and generally will—be a qualifying disability under the ADA" so long as the plaintiff provides "some evidence" of limits

6

to her substantial life activity, including normal cell growth).  Accordingly, the Court concludes that Gunther had a disability within the meaning of the ADA.  The EEOC's Motion for Partial Summary Judgment is thus granted.

## IV.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The EEOC asserts three claims under the ADA: unlawful termination, failure to accommodate, and retaliation.  Defendants move for summary judgment on all counts.  The Court addresses each claim in turn.[1]

### A.    Unlawful Termination (Count 1)

Turning to the merits, Defendants first move for summary judgment on the EEOC's claim that they unlawfully terminated Gunther on the basis of her disability.  A *prima facie* case of disability discrimination requires the plaintiff "to show that (1) [she] was disabled within the meaning of the ADA, (2) [she] was a 'qualified individual'" within the meaning of the ADA, and "(3) the defendant took an adverse employment action against [her] on the basis of [her] disability." Pena v. Honeywell Int'l, 923 F.3d 18, 27 (1st Cir. 2019) (quoting 42 U.S.C. §§ 12111(8), 12112(a)) (citing Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005)).  As discussed above, the Court has determined that Gunther's breast cancer constitutes a disability within the meaning of the ADA, satisfying the first element.  Defendants do not dispute the third element that Gunther's job offer was rescinded because of her cancer treatment, constituting an adverse employment action.  Thus, the only disputed element is whether Gunther was a "qualified individual" within the meaning of the statute.

---

[1] The parties also dispute the admissibility of two statements provided by Defendants, which the EEOC challenges on hearsay grounds.  The Court finds that, even assuming the statements are admissible, summary judgment is not warranted.  Accordingly, the Court need not determine their admissibility at this stage.  The parties may renew any evidentiary objections through motions in limine or another appropriate procedural vehicle.

To be a "qualified individual" under the ADA, a plaintiff must demonstrate "first, that she possesses the requisite skill, experience, education and other job-related requirements for the position, and second, that she is able to perform the essential functions of the position with or without reasonable accommodation." Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000) (internal citations omitted) (citing, *inter alia*, 42 U.S.C § 12111(8)).  The EEOC has satisfied the first element of this standard, as the undisputed record reflects that Gunther possesses relevant experience for the EAA role, and Defendants' decision to extend her an offer of employment supports the conclusion that she met the position's baseline requirements.  Defendants' argument instead focuses on Gunther's ability to perform the essential functions of the EAA position in light of her medical condition and anticipated treatment.  A review of the record establishes that a genuine dispute as to material fact exists on three bases: (1) whether evictions constitute an essential function of the EAA role; (2) whether Gunther was able to perform evictions with accommodations; and (3) whether the proposed accommodations would have imposed an undue hardship on Defendants.

### 1.    Essential Functions

First, there is a genuine dispute as to whether evictions-related duties constitute an essential function of the position.  An essential function is one that is "fundamental" to the job, as opposed to "marginal" tasks, though it may include "individual or idiosyncratic characteristics" of the job." Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001) (quoting Ward v. Mass. Health Rsch. Inst., Inc., 209 F.3d 29, 34 (1st Cir. 2000)).  Determining whether a function is essential is a fact-specific, case-by-case inquiry. Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25 (1st Cir. 2002).  The ADA provides that courts should give substantial, but not controlling, weight "to the employer's judgment" and any written job description. See 42 U.S.C.

§ 12111(8).

Here, the EEOC has provided evidence from which a reasonable jury could conclude that eviction-related work was not an essential function.  The EEOC alleges that prior EAAs devoted only a portion of their time (approximately five hours per week) on eviction-related tasks [Dkt. 72 ¶ 106], that temporary EAAs did not perform such work at all [id. ¶ 121], and that when the position was filled by temporary workers, eviction responsibilities were performed by other employees [id. ¶ 38].  The EEOC also points to evidence that Gunther's replacement did not perform eviction-related work until approximately six months after starting. [Id. ¶¶ 109-110, 127].  Moreover, the EEOC states that an eviction moratorium was in effect in the City of Malden during the relevant period in 2021, potentially reducing or eliminating the need for such tasks. [Id. ¶¶ 115-118].  Defendants dispute this characterization, contending that eviction processing is a time-sensitive and time-consuming function and that Gunther's lack of experience in evictions would require a longer training time. [Id. ¶¶ 34-37, 39].  At summary judgment, however, the Court must view the evidence in the light most favorable to the non-moving party.  On this record, the EEOC's evidence regarding the frequency, timing, and necessity of eviction-related duties creates a genuine dispute as to material fact.

### 2.    Capability to Perform Essential Functions

The EEOC has also presented evidence from which a reasonable jury could conclude that Gunther could perform evictions-related duties with reasonable accommodation.  A plaintiff bears the burden of showing that an accommodation would enable her to perform essential functions. Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016) (internal citations omitted); Reed v. LePage Bakeries, 244 F.3d 254, 259 (1st Cir. 2001).  This inquiry is individualized and particular to the plaintiff's circumstances. Garcia-Ayala, 212 F.3d at 648.

The ADA contemplates a range of potential reasonable accommodations, including, among other things, "job restructuring, modified work schedules, [and] reassignment to vacant positions." Trahan v. Wayfair Me., LLC, 957 F.3d 54, 65 (1st Cir. 2020).

Here, the EEOC has provided evidence that Gunther could adequately perform evictions tasks with scheduling and/or remote work accommodations. The EEOC cites that Gunther's medical providers reviewed the EAA job description and opined that she was able to perform the position's duties, subject to limited time off for appointments and recovery. [Dkts. 72 ¶¶ 42, 45; 58-17]. The record further reflects that Gunther sought other employment during this period, maintained part-time work as an executive assistant for another employer, and began a full-time position shortly after Defendants rescinded her offer. [Dkt. 72 ¶¶ 226-230]. With respect to potential accommodations, the EEOC provides evidence that Gunther's treatment schedule was predictable and limited to one day per week or per month, allowing for advance scheduling or scheduling during weekends or afternoons. [Id. ¶¶ 143-153, 212-225]. The EEOC also presents evidence that eviction-related training was individualized, scheduled flexibly, and in some instances could be completed remotely, and that the training itself was limited to several hours at a time, up to five to seven hours monthly. [Id. ¶¶ 94, 96, 101-105]. Defendants rely on contrary evidence, including Gunther's November 5, 2021, email to Harvard stating she was unable to work "for a few months" due to unexpected health issues, her lack of prior experience in evictions-related work, and evidence of fatigue and other treatment related side effects. [Id. ¶¶ 30, 62, 67-68]. At summary judgment, however, such evidence does not resolve factual disputes but instead presents competing inferences for a jury to weigh.

### 3.    Undue Hardship

Finally, there is a genuine dispute as to whether schedule modifications or remote work

would have imposed an undue hardship on Defendants. As an affirmative defense, an employer bears the burden of demonstrating that a proposed accommodation would require significant difficulty or expense. See Rios-Jimenez v. Principi, 520 F.3d 31, 41 (1st Cir. 2008). Relevant factors include the cost and nature of the accommodation, the size and overall financial resources of the employer, and the impact on the business. Reed, 244 F.3d at 259. The employer must "produce at least some modicum of evidence showing that the [requested accommodation] would be a hardship, financial or otherwise.'" Calero-Cerezo v. U.S. Dept. of Just., 355 F.3d 6, 23 (1st Cir. 2004) (quoting Ward, 209 F.3d at 37).

Here, Defendants have not established as a matter of law that scheduling or remote modifications would have constituted an undue hardship. In support of their position, Defendants rely on Gunther's second medical note, which indicated that she would require approximately one day per week for treatment for an undetermined period of time, followed by additional leave for surgery and recovery of uncertain duration. Defendants contend that accommodating such absences would require reallocation of duties among other employees, which would be unreasonably burdensome. They further argue that the EAA position is unique, as it is the only Boston-based role with access to senior executives' administrative and logistical needs, including handling sensitive credit card and passport information, limiting flexibility in coverage. [Dkt. 72 ¶ 40]. Finally, Defendants argue that scheduling accommodations are *per se* unreasonable because Gunther's treatment-related absences were "indefinite."

These assertions, however, are largely general in nature and do not establish undue hardship as a matter of law. Defendants have not provided evidence quantifying the economic cost of the proposed accommodation, identifying specific operational disruptions, or demonstrating that coverage during certain hours would be infeasible. Cf. Soto-Ocasio v. Fed.

11

Express Corp., 150 F.3d 14, 20 (1st Cir. 1998) (recognizing undue burden where employer would need to reallocate other employees to complete six to nine hours' worth of work per day to meet deadlines); Carr v. Reno, 23 F.3d 525, 529 (App. D.C. 1994) (concluding that "[t]he U.S. Attorney's Office 4:00 p.m. deadline renders a flexible schedule an undue hardship" because others would have to do plaintiff's work on a regular basis); Guice-Mills v. Derwinski, 772 F. Supp. 188, 199 (S.D.N.Y. 1991) (reasoning that requested accommodation of 10:00 a.m. daily start time was unreasonable burden).  Nor have they shown that in-person presence is required during particular hours such that scheduling flexibility could not be accommodated. See Ward, 209 F.3d at 29 (citing cases denying a motion for summary judgment because whether fixed attendance is an essential function is a question of fact).  By contrast, the EEOC has introduced evidence that could support an inference that scheduling and remote modifications would not have presented an undue hardship.  For example, the EEOC points to evidence that Defendants maintain an answering service for after-hours calls [Dkt. 72 ¶ 89], that the standard EAA schedule is approximately 8:30 AM to 4:30 PM on weekdays with limited after-hours work [id. ¶¶ 90, 114], that a prior EAA had been permitted a modified work schedule from approximately 6:30 AM to 3:30 PM [id. ¶ 91], and that Defendants' President testified that they could absorb "[f]our or five hours a week for a few weeks" to accommodate an employee [id. ¶¶ 198-200]. The EEOC also presents evidence regarding Defendants' substantial financial resources, indicating that scheduling accommodations would not have imposed significant strain on their operations. [Id. ¶¶ 85-86].

As to Defendant's assertion that Gunther's requested accommodation was "indefinite," the record, viewed in the light most favorable to the EEOC, does not support that characterization.  Cases finding "indefinite" accommodations typically involve leaves of absence

for an unknown, continuous period. E.g., Sarkisian v. Austin Preparatory Sch., 85 F.4th 670, 674-75 (1st Cir. 2023). Here, Gunther sought intermittent and limited absences for treatment and recovery. Even if the end date of such regular absences was unknown at the time of her second medical note, this situation is materially distinct from the other cases because her absences were limited to several days at a time. Accordingly, Defendants' reliance on the label of "indefinite leave," without more, does not establish undue hardship as a matter of law. Thus, summary judgment of Count 1 is denied.

## B.    Failure to Accommodate (Count 2)

Defendants next move for summary judgment on the EEOC's failure-to-accommodate claim. To establish such a claim under the ADA, a plaintiff must show that (1) she is disabled within the meaning of the statute, (2) she is a "qualified individual" within the meaning of the statute, and (3) the employer, despite knowing of the plaintiff's disability, failed to provide a reasonable accommodation. Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003). As previously discussed, the Court has determined that Gunther is disabled within the meaning of the ADA because of her breast cancer, thereby satisfying the first element. With respect to the second element, the Court has concluded, per its prior analysis, that there exists a genuine dispute of material fact as to whether Gunther could perform the essential functions of the EAA position with or without reasonable accommodation. Thus, the remaining issue is whether Defendants failed to provide a reasonable accommodation despite knowledge of Gunther's disability and her request for accommodations. The Court concludes that this element likewise presents disputed issues of material fact sufficient to preclude summary judgment.

To establish an employer's knowledge of a disability and trigger its duty to provide a reasonable accommodation, an employee must make a request that is "sufficiently direct and

specific" and that "explain[s] how the accommodation is linked to [her] disability." Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012). Once a sufficient request has been made, the ADA's implementing regulations contemplate an "informal, interactive process" between the employer and employee to determine whether a reasonable accommodation is possible. 29 C.F.R. § 1630.2(o)(3). Although the precise scope of this obligation is not defined, "[t]he employer has at least some responsibility in determining the necessary accommodation." Jacques v. Clean-Up Grp., Inc., 96 F.3d 506, 514 (1st Cir. 1996) (alteration in original). As a result, in some circumstances, an "employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA." Jacques v. Clean-Up Grp., Inc., 96 F.3d 506, 515 (1st Cir. 1996). The employer does not have the "unreasonable burden of raising and discussing every conceivable accommodation with the disabled employee." Tobin, 433 F.3d at 109. An employer can demonstrate its good faith effort to determine the appropriate reasonable accommodation by "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." Goodrich v. WellPoint, Inc., No. 14-CV-00037, 2015 WL 4647907, at *10 (D. Me. Aug. 5, 2015) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir.1999)) (citing E.E.O.C. v. Kohl's Dept. Stores, Inc., 774 F.3d 127, 133 (1st Cir. 2014)).

The EEOC has presented sufficient evidence from which a reasonable jury could conclude that Defendants failed to meaningfully engage in the interactive process as required under the ADA. The undisputed record reflects that Gunther made a request for accommodation

14

in connection with her breast cancer diagnosis, thereby triggering Defendants' obligation to engage in an interactive process to determine whether a reasonable accommodation was feasible. While Defendants took some steps toward that obligation, including by twice requesting information from Gunther's medical provider about her condition and anticipated limitations, the EEOC has presented evidence that Defendants thereafter reviewed the resulting medical notes unilaterally and did not engage in further dialogue with Gunther or her medical provider to clarify the timing, duration, or flexibility of her treatment and recovery needs. [Dkt. 72 ¶ 191]. The EEOC similarly provides evidence that there was no meaningful discussion between the Parties regarding potential accommodations, such as modified scheduling or remote or hybrid work arrangements. [Id.].  Viewing the evidence in the light most favorable to the EEOC, a reasonable jury could conclude that Defendants did not engage in the interactive process or explore potential reasonable accommodations in good faith.  Accordingly, there remains a genuine dispute of material fact, and summary judgment on the EEOC's failure-to-accommodate claim is denied.

### C.    Retaliation (Count 3)

Finally, Defendants move for summary judgment on the EEOC's retaliation claim.  The ADA's retaliation provision prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful" under the statute. 42 U.S.C. § 12203(a).  To establish a *prima facie* claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action. Colón-Fontánez v. Mun. of San Juan, 660 F.3d 17, 36 (1st Cir. 2011); Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 115 (1st Cir. 2024).  A plaintiff may maintain a retaliation claim even where she fails on an

15

unlawful termination or failure-to-accommodate claim.[2] Soileau v. Guilford of Me., Inc., 105 F.3d 12, 16 (1st Cir. 1997).

Here, the first element is satisfied because Gunther's request for accommodation is protected conduct under the ADA's retaliation provision. Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003). It is likewise undisputed that Gunther suffered an adverse employment action when Defendants rescinded her job offer. The disputed issue is the third element of causality. The EEOC must show that Defendants terminated Gunther's offer because she requested an accommodation, not merely because of uncertainty regarding her ability to work.

Viewing the evidence in the light most favorable to the EEOC, a reasonable jury could conclude that Defendants acted in response to Gunther's accommodation request. To show causality, "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (quoting Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007)). The record reflects close temporal proximity between Gunther's second medical note and the rescission of her offer, separated by only two days. The EEOC further points to evidence that Defendants began contacting other candidates shortly after receiving Gunther's first medical note and continued recruiting and interviewing candidates between Gunther's first and second medical note. A reasonable jury could infer from this sequence that

---

[2] Defendants argue that the EEOC's retaliation claim merely "repackages" its discrimination theory. The Court disagrees. The EEOC's retaliation claim is distinct in that it alleges that Defendants rescinded Gunther's offer because she requested an accommodation, whereas the termination claim focuses on whether the rescission was because of her disability, and the failure-to-accommodate claim concerns whether Defendants refused to provide reasonable accommodations. Moreover, whether Gunther is a "qualified individual" is an element of the EEOC's discrimination claim but not its retaliation claim. The claims therefore rest on distinct legal theories and facts.

Defendants began seeking an alternative hire as soon as Gunther indicated she would require accommodations, even before the full scope of those accommodations was clarified, supporting an inference that the rescission was prompted by the request itself. These facts are sufficient to satisfy the EEOC's initial *prima facie* burden.

Ordinarily, the burden would then shift to Defendants to "articulate a legitimate, non-retaliatory reason for the challenged action[]." Billings v. Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008). Defendants have not developed such an argument in connection with this Motion, and the Court therefore does not consider it further. Accordingly, there remains a genuine dispute of material fact, and summary judgment of the EEOC's retaliation claim is denied.

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. 57] is **DENIED**. The EEOC's Motion for Summary Judgment [Dkt. 68] is **GRANTED**. The Court finds that Gunther had a disability within the meaning of the ADA, and that issue is therefore resolved as a matter of law. All three of the EEOC's claims, including unlawful termination, failure to accommodate, and retaliation, remain.

**SO ORDERED.**

Dated: August 7, 2026                                  /s/ Angel Kelley
                                                                Hon. Angel Kelley
                                                                United States District Judge